IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAMAR T. McKENSTRY,

   Plaintiff,

v.

ROBERT S. DEAN, JR., et al.,

   Defendants.

Civil Action No.: SAG-24-1760

MEMORANDUM

Plaintiff Lamar T. McKenstry, who is currently incarcerated at Jessup Correctional Institution ("JCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Warden Robert Dean, Robin Woolford, Adebukola Adewole, Sandra Holmes, Kimberly Redditt, Ieashia Pressley, Detective Antonio Cabezas, Lt. Gena Addison, Correctional Officer (CO) Adeniran Adebayo, CO Olamilekan Amaka, and Sgt. Rene Greene ("State Defendants") as well as LPN Agustine Agwu.[1]  ECF Nos. 1, 4.  State Defendants moved for dismissal of the complaint or, alternatively, for summary judgment in their favor.  ECF No. 28.  McKenstry was notified of his right to respond, ECF No. 29, and later granted an extension of time.  ECF No. 33.  McKenstry filed the pending Motion for Discovery in response to State Defendants' motion.  ECF No. 35.  No hearing on the motions are necessary.  See Loc. R. 105.6 (D. Md. 2025).  For the reasons stated below, State Defendants' Motion is granted and McKenstry's motion is denied.

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full names.

I. **Background**

    A. **Complaint Allegations**

According to McKenstry, on November 1, 2023, LPN Agwu falsely reported that McKenstry spat and threw urine and feces at him. ECF No. 1 at 10. McKenstry was criminally charged with two counts of second-degree assault. *Id.* A criminal summons was issued on November 27, 2023. *Id.* at 11. McKenstry was later acquitted of the charges in the District Court of Anne Arundel County, Maryland. *Id.* at 10. McKenstry contends that the criminal charges resulted from Lt. Addison and Adebayo conspiring to send the false report to Detective Cabezas by way of the Intelligence and Investigative Division ("IID"). *Id.* at 11. McKenstry also lost 60 good conduct credits and was placed in disciplinary segregation for 30 days. *Id.* at 10. He appealed the Hearing Officer's ("HO") findings to Warden Dean on November 8, 2023, but was ignored. *Id.* at 11. He claims that Warden Dean, Robin Woolford, Sandra Holmes, Kimberly Redditt, and Ieashia Pressley denied or dismissed all of his appeals. *Id.* at 11-12.

    McKenstry also alleges that on November 22, 2023, between 1:55 and 2:05 p.m., he was assaulted in his cell by CO Amaka "for absolutely no reason." ECF No. 1 at 9. McKenstry states that CO Amaka maced him but never took him to receive medical treatment despite his pleas. *Id.* One month later, McKenstry claims Sgt. Greene wrote a false report asserting that McKenstry had disobeyed orders, refused housing, and entered or was in a location without authorization. *Id.* HO Adewole found him guilty by HO Adewole on January 9, 2024, despite the documentary and video evidence McKenstry presented at the hearing. *Id.* at 10. As a result, he received 15 days in disciplinary segregation and lost 30 good conduct credits. *Id.* at 9, 10.

**B.     State Defendants' Response**

On November 1, 2023, Officer Adebayo escorted LPN Agwu while he distributed medication in B Wing of B Building. ECF No. 28-4 at 6.[2] Agwu arrived at McKenstry's cell and asked for his identification card; in response, McKenstry, agitated, spit in Agwu's face and threw an unknown liquid through the gap in the door. *Id.* at 5. Lt. Addison notified IID of the staff assault and described the incident. *Id.* IID interviewed both Agwu and Officer Adebayo. *Id.* at 6. McKenstry was issued a Notice of Inmate Rule Violation ("NOIRV") charging him with assault and/or battery on staff (Rule 101) and possession of contraband (Rule 315). ECF No. 28-5. McKenstry voluntarily waived his right to appear before the hearing officer and accepted a plea agreement for 30 days segregation and loss of 60 days of good conduct credit. *Id.* at 6. He appealed the hearing officer's decision to the Inmate Grievance Office ("IGO") on December 7, 2023. ECF No. 28-6 at 4-5. McKenstry's appeal was dismissed on January 17, 2024, finding that the grievance was without merit because his guilty plea constitutes an admission of the rule violations and waives all hearing rights. *Id.* at 6. Following IID's investigation, Detective Cabezas obtained a criminal summons from the Anne Arundel County Court Commissioner's Office charging McKenstry with second-degree assault on a DOC employee. ECF No. 28-4 at 6, 20-25.

State Defendants assert that no force was used against McKenstry by CO Amaka on November 22, 2023. ECF No. 28-1 at 5. Gilbert Abraham, a Case Manager at JCI, attests that no use of force report or serious incident reports exist involving McKenstry and CO Amaka. ECF No. 28-3 at ¶ 3; *see also* ECF No. 28-4 at ¶ 3. CO Amaka also attests that at no time did he use a fogger or mace against McKenstry. ECF No. 28-13 at ¶ 4 (Amaka Decl.). He further explains that had

---

[2] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case File (CM/ECF) system.

McKenstry been maced, departmental policy requires that an inmate be escorted to the medical department to be evaluated for pepper spray exposure; CO Amaka did not take McKenstry because he had not been maced. *Id.* at ¶ 5. CO Amaka avers that his interaction with McKenstry that day was during meal distribution. *Id.* at ¶ 3. McKenstry's hands were in the feed-up slot preventing CO Amaka from closing it; McKenstry refused orders to remove his hands. *Id.* CO Amaka left McKenstry's cell to inform the building sergeant, Lt. Abiodun Oyebo, about the issue. *Id.*; *see also* ECF 28-14 at ¶ 6 (Oyebo Decl.).

Still, McKenstry filed a Request for Administrative Remedy ("ARP"), No. JCI-1464-23, alleging that CO Amaka maced him on November 22, 2023. ECF No. 28-7 at 5. Warden Dean dismissed the ARP, finding that there was no evidence to substantiate his claim. *Id.* at 4. McKenstry filed an appeal with the IGO on January 30, 2024; it was dismissed because he failed to properly exhaust his administrative remedies. ECF No. 28-8 at ¶ 4, pg. 6-7. Cora Kephart, Centurion's Cumberland Region Director, avers that McKenstry's medical records do not contain any sick call request dated November 22, 2023. ECF No. 28-15 at ¶ 3. The sick call request McKenstry filed the following day does not complain of any mace-related symptoms; rather, he requests to see a provider for pain in his left hand and to be assigned to a bottom bunk. *Id.* at 4. A week later, McKenstry still did not raise any mace-related medical issues via sick call request. *Id.* at 5.

On December 22, 2023, McKenstry received a NOIRV based on Sgt. Greene's report that he refused to move to administrative segregation after he was designated there for making threats to staff. ECF No. 28-9 at 4-6. McKenstry had a hearing before HO Adewole, at which he was found guilty of violating Rules 316 and 402. *Id.* at 7-10. He was sentenced to 15 days segregation and lost 30 days of good conduct credits. *Id.* at 10. McKenstry's appeal to the IGO was denied.

4

ECF No. 28-10 at ¶ 2, pg. 5-6. The IGO found that there was substantial evidence to support HO Adewole's findings. *Id.* at 5-6. The same day he received the NOIRV, McKenstry filed ARP JCI-0021-24, asserting that he did not refuse housing and was just informing Sgt. Greene of his preference to return to general population and therefore was illegally being held in lockup. ECF No. 28-11 at 5. The Warden dismissed the ARP because inmates cannot file ARPs regarding case management decisions. *Id.* at 4. McKenstry appealed to the IGO on March 19, 2024, Case No. 20240314, but his appeal was dismissed for failure to state a claim. ECF No. 28-12 at ¶ 3, pg. 4-5.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the

5

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, a party opposing the conversion of a motion to dismiss into one for summary judgment must ordinarily submit a Rule 56(d) affidavit setting forth their reasons for opposition. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Even without a Rule 56(d) affidavit, the court may consider whether the nonmoving party "adequately informed the [] court that the motion [for summary judgment] is [premature] and more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). The Fourth Circuit has emphasized that discovery is "broadly favored" in advance of reaching summary judgment and district courts are to afford pro se plaintiffs leniency in regard to the requirements of Rule 56(d). *Farabee v. Gardella*, 131 F.4th 185, 193–95 (4th Cir.

6

2025). Nevertheless, a plaintiff "cannot simply demand discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011).

State Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because State Defendants styled their motion as a motion to dismiss, or in the alternative, for summary judgment, McKenstry was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

McKenstry has not filed a Rule 56(d) affidavit, but the Court will consider whether his pending Motion for Discovery demonstrates that summary judgment is premature. McKenstry's motion does not provide any affirmative statements of why further discovery is necessary. *See* ECF No. 35. Rather, McKenstry includes only a list of interrogatories seeking information about the individuals involved in bringing criminal charges against him. *Id.* He does not explain why answers to these questions are necessary for him to be able to respond to the dispositive motion or

7

identify the purportedly disputed facts that would necessitate discovery. McKenstry's desire to uncover such information is insufficient to explain why summary judgment is premature.

McKenstry's request is distinguishable from that in *Farabee,* where the pro se plaintiff failed to conform with the Rule 56(d) requirements but specifically argued that "summary judgement [was] premature because he had not yet had an opportunity to conduct discovery." *Farabee*, 131 F. 4th at 192. McKenstry not only fails to identify a particular need for future discovery but also fails to advance any argument that summary judgment is premature. McKenstry's case is further distinguishable from *Farabee* in that the plaintiff in *Farabee* could not "access legal materials, suffer[ed] from severe mental illness, and [was] institutionalized." *Id*. at 197. McKenstry is not in the same position. Without more, his motion for discovery must be denied. Consideration of the State Defendants' pending motion shall therefore continue.

## III. Discussion

State Defendants argue that their motion should be granted because: 1) they are immune in their official capacities;[3] 2) McKenstry failed to exhaust his administrative remedies; 3) McKenstry failed to state an excessive force claim; 4) McKenstry failed to state a claim for denial of medical care; 5) McKenstry failed to state a conspiracy claim; 6) McKenstry failed to establish direct or supervisory liability; 7) McKenstry failed to state a claim for violation of his due process rights; and 8) Defendants are entitled to qualified immunity. ECF No. 28-1.

---

[3] The Complaint is silent as to whether McKenstry sues Defendants in their individual or official capacities. However, in his Motion for Discovery, McKenstry states that he is suing Defendants in their individual capacities. ECF No. 35. Therefore, the Court will construe McKenstry's claims as individual capacity claims and need not address the State Defendants' immunity argument.

### A.  Exhaustion of Administrative Remedies

State Defendants raise the affirmative defense that McKenstry has failed to exhaust his administrative remedies regarding CO Amaka's use of force and subsequent denial of medical treatment. ECF No. 28-1 at 13. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate [and pretrial detainee] suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

Exhaustion under § 1997e(a) is mandatory, and therefore the plaintiff must exhaust his available administrative remedies before this Court will hear his claim. *See Ross v. Blake*, 578 U.S. 632, 639 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005). Consequently, if McKenstry has not properly presented any of his claims through an available administrative remedy procedure, that claim must be dismissed pursuant to the PLRA. *See Ross*, 136 S. Ct. at 1857. Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. *Jones*, 549 U.S. at 215–16. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the [detainee] has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where

9

administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To properly exhaust administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore*, 517 F.3d at 725. Under this requirement, an inmate must use "all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.07.01.05B, 12.02.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on

which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Corrections denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[4] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Corrections, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of the Department of Public Safety and Correctional Services for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1). A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).

---

[4] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

11

Here, it is undisputed that McKenstry did not properly complete the administrative remedies process available at JCI for his excessive force claim against Officer Amaka. The record shows that he filed ARP JCI-1464-23 and appealed it to the IGO, but did not file an intermediate appeal with the Commissioner of Corrections, thereby failing to properly exhaust. This Court will therefore dismiss McKenstry's excessive force claim without prejudice for failure to exhaust administrative remedies.

### B. Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical

condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

McKenstry's medical care claim hinges on his allegation that he was maced by CO Amaka. He asserts that he did not receive medical care after he was maced, despite having difficulty seeing and breathing and vomiting for several days. Taking his assertions (which are not presented by affidavit or verified statement) as true, his symptoms could constitute a serious medical issue.

However, even construing the facts in the light most favorable to McKenstry, there is nothing in the record which establishes CO Amaka's knowledge or awareness of any such symptoms. There is no use of force or serious incident report or any sick call requests substantiating those medical issues or showing that CO Amaka (or any other defendant) knew of them. CO Amaka, for his part, denies having maced McKenstry and denies any such knowledge. In the absence of any evidence of actual knowledge or awareness of McKenstry's alleged symptoms, Defendants are therefore entitled to summary judgment on this claim.

### C. Conspiracy

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff asserting a claim of conspiracy has a "weighty burden." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (quoting *Hinkle*, 81 F.3d at 421). An essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Without an agreement, the independent or parallel conduct of two or more wrongdoers do not amount to a conspiracy. *See id.* Without a deprivation of a constitutional right, a conspiracy claim is not stated. *Massey v. Ojaniit*, 759 F.3d 343, 357–78 (4th Cir. 2014), *see also Glassman v. Arlington Cnty., VA*, 628 F.3d 140, 150 (4th Cir. 2010).

McKenstry alleges that Defendants Addison, Adebayo, and Cabezas conspired to bring false criminal charges against him. McKenstry, however, does not plead any facts showing that these individuals were in agreement to violate McKenstry's constitutional rights. Without more,

14

their apparently independent actions do not amount to a conspiracy. As such, McKenstry's conclusory claim fails to state a claim for relief and must be dismissed.

### D. Personal Participation

Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Here, McKenstry alleges that Defendants Dean, Woolford, Holmes, Pressley, and Redditt were responsible for denying or dismissing his grievances. McKenstry does not otherwise allege any wrongdoing by these Defendants. Defendants' purported denial of McKenstry's grievances, alone, is insufficient to state a claim for relief. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation in a constitutional violation) (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")). Therefore, the Complaint against Defendants Dean, Woolford, Holmes, Pressley, and Redditt must be dismissed for failure to state a claim.

### E. Due Process

The Fourth Circuit has held that generally "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (noting that there may be exceptions where the action is retaliatory or arbitrary) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474,

499 (4th Cir. 2005). McKenstry alleges that both Sgt. Green and LPN Agwu wrote false reports which led to disciplinary charges and, in LPN Agwu's case, state criminal charges. However, he has not pleaded facts showing that Defendants made these allegedly false reports for the purpose of retaliating against McKenstry for his protected activity nor that they were wholly arbitrary decisions. Therefore, as no exceptions apply here, these claims cannot proceed.[5]

To the extent McKenstry asserts that he was denied procedural or substantive due process during his disciplinary proceedings, his claims must fail. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–66, 592. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the hearing officer's

---

[5] Several attempts have been made to serve LPN Agwu. *See* ECF No. 33. Most recently, the U.S. Marshal attempted to personally serve Agwu but was unable to locate him. ECF No. 36. Regardless, because the claim against Agwu is insufficient, the Complaint against Agwu will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

16

decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322 n.5.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Massachusetts Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d 159, 171–72 (4th Cir. 2019). As long as there is some evidence in the record to support a disciplinary hearing officer's factual findings, a federal court will not review their accuracy.

In both instances, McKenstry received a NOIRV notifying him of the disciplinary charges against him and the supporting facts. ECF No. 28-5 at 9-10; ECF No. 28-9 at 4-5. The hearing record for the charges raised by LPN Agwu shows that on November 8, 2023, McKenstry entered a plea agreement waiving his right to appear before a hearing officer and accepting the stated sanctions. ECF No. 28-5 at 6. McKenstry attended a disciplinary hearing before HO Adewole on January 9, 2024, for the charges raised by Sgt. Greene. ECF No. 28-9 at 7-10. He did not request a representative, witnesses, or to present evidence. *Id.* at 7. After hearing from McKenstry and Sgt. Greene, HO Adewole found McKenstry guilty of both charges because he did not obey Greene's order and remained in a cell after he had been notified of his new placement. *Id.* at 9. McKenstry was not denied any of the required procedural protections. HO Adewole states in the hearing record the basis for his findings, specifically noting the testimony of McKenstry and Sgt. Greene. *Id.* Nothing establishes that his decision was arbitrary or wholly unsupported by evidence. Thus, there

is no basis for the Court to disturb those findings because McKenstry received substantive due process and the decisions were based upon "some evidence." For these reasons, Defendants are entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, McKenstry's Motion for Discovery is denied and State Defendants' Motion, construed in part as one for summary judgment, is granted. McKenstry's excessive force claim against Defendant Amaka is dismissed without prejudice for failure to exhaust administrative remedies and his conspiracy claim and claims against Defendants Dean, Woolford, Holmes, Pressley, and Reddit are dismissed for failure to state a claim. All claims against LPN Agwu are dismissed pursuant to 28 U.S.C. § 1915. As to all other claims, the State Defendants are entitled to summary judgment.

A separate Order follows.

August 22, 2025                                   /s/
Date                                              Stephanie A. Gallagher
                                                United States District Judge